RUTH L. LEWIS *vs.* LEVINA MESERVE.

*Dower—in what wife is entitled after divorce.   Estoppel of tenant to deny his grantor's seisin.   Abatement.*

When a divorce has been decreed to the wife for the fault of her husband for any other cause than impotence, she is entitled to dower in all real estate owned by him at any time during the coverture, if she has not barred her right thereto by joining in a deed or otherwise.

In an action for dower in such real estate, the tenant having received her title by warranty deed from the demandant's husband after the marriage and before the divorce, cannot deny the seisin of her grantor.

The objection that it does not appear that the defendant was tenant of the freehold when the action was commenced can be taken advantage of only by plea in abatement.

ON REPORT.

WRIT OF DOWER.

The facts appear in the opinion.

*C. W. Larrabee,* for the demandant, cited *Davol* v. *Howland,* 14 Mass. 219; *Harding* v. *Alden,* 9 Greenl. 151; Bishop on Marriage and Divorce, §§ 665, 739.

*Wm. T. Hall,* for the tenant.

VIRGIN, J. This is an action of dower by the plaintiff who was the wife of one Reuben G. Meserve from June 15, 1860, when they were married, until August, 1870, when a divorce was decreed to her for the fault of her husband.

The case comes before us on report; and such a judgment is to be entered as the law and evidence require.

It is admitted that a legal demand was made at least one month before the date of the writ; that the defendant was seised in fee o the premises at the time the demand was made; and that Reuben G. Meserve was seised of the premises during the coverture.

The defendant contends that the plaintiff is dowable in such real estate only as her husband owned at the time of bringing her libel for divorce. If this be a correct view of the law, then the plaintiff cannot prevail in this action; for the case finds that the husband conveyed the very premises described in the writ, to the defendant, by deed of warranty, duly executed and acknowledged on the 13th of May, 1867, and recorded on the 20th of the same month—nearly three years before the date of the libel. But we do not so understand the law.

Dower originated in humane considerations. It is not the result of contract, but as Lord Coke expressed it, "it is the provision which the law makes for a widow out of the lands and tenements of her husband for her support and the nurture of her children." The prominent place it holds among the early writers as well as

among the decisions in the year-books, affords abundant evidence of the favor with which it was regarded in the early history of the common law. And Bacon, in his treatise on uses, remarks, that "tenant in dower is so much favored as that it is the common by-word of the law that the law favoreth three things—life, liberty, dower." 1 Washb. on Real Prop. 172.

And this favor has extended to and continued with the legislatures of Massachusetts and of this State since the separation. For while, at common law, in order to entitle a widow to dower, she must have been the wife of the husband at the time of his decease, and hence a divorce *a vinculo* would defeat her right (*Stilphen* v. *Houdlette*, 60 Me. 447), the Colony of Mass. Bay, in 1641, enacted that "Forasmuch as no provision hath been made for any certain maintenance for wives after the decease of their husbands: It is ordered, &c., That every married woman (living with her husband in this jurisdiction, or other where absent from him with his consent, or through his mere default, or inevitable providence, or in case of divorce where she is the innocent party) that shall not before marriage be estated by way of jointure, in some houses, lands, tenements, or other hereditaments, for term of life, shall immediately after the death of her husband, have right and interest, by way of dowry, in and to one-third part of all such houses, lands, tenements, and hereditaments as her husband was seised of to his own use, either in possession, reversion, or remainder, in any estate of inheritance (or frank-tenement not then determined), at any time during the marriage, to have and enjoy, for the term of her natural life," &c.; thus changing the common law by giving dower, in case of divorce, to an innocent wife, but her "right and interest" not to be assigned until "after the death of her husband." Anc. Chart. 99, c. xxxvii.

The Commonwealth of Massachusetts, by the act of 1785, c. 69, § 5, changed the time for assigning dower to a divorced woman by providing that "when the divorce shall be for the cause of adultery committed by the husband, the wife shall have her dower assigned her in the lands of her husband, in the same manner as if such husband was naturally dead."

By the Pub. Laws of 1821, of this State, c. 71, § 5, it was provided that "when the divorce shall be for the cause of adultery committed by the husband, in addition to her dower, to be assigned her in the lands of her husband, in the same manner as if such husband was naturally dead, and to the real estate which her husband held in her right," the court was authorized to assign her certain other property therein mentioned.

It may be remarked generally, that as this statute has been amended from time to time by adding other causes for divorce, the provision limiting the right of dower to the cause of adultery on the part of the husband has been extended to the new causes; until in 1854 (c. 116) the statute in these two particulars contained, substantially, the same provisions as R. S., c. 60, §§ 2 and 7, to wit (§ 2), "A divorce from the bonds of matrimony may be decreed . . when the judge deems it reasonable and proper, conducive to domestic harmony and consistent with the peace and morality of society;" and (§ 7), "when a divorce is decreed to the wife for the fault of her husband for any other cause" (than impotence), "she shall have dower in his real estate, to be recovered and assigned to her as if he was dead."

Again, "dower," as used in the statutes in this State, means "dower at the common law in the lands of the husband," with certain exceptions not material to this case. R. S., c. 103, § 1. And at common law, a wife is entitled to be endowed, for her natural life, of the third part of all the lands whereof her husband was seised, either in deed or in law, at any time during the coverture, and of which any issue that she might have had, might by possibility have been heir. 4 Kent's Com. 33 and 34. So that dower at common law embraces lands alienated during coverture. Hence, "dower in his real estate" does not mean "dower in such lands" only as the husband owned at the date of the libel, but such also as he had owned "at any time during the coverture," and may have alienated without her joining in the deed or otherwise barring her right.

In view of these considerations, we feel warranted in adopting

the direct and forcible language of Parsons, C. J., in construing the act of 1785, c. 69, § 5, in *Davol* v. *Howland*, 14 Mass. 219:—— " This is too narrow a construction ; for the whole sentence manifestly shows an intention to place the divorced wife upon the same footing with the widow, in respect to dower. The construction contended for would operate severely upon an unfortunate woman who feels obliged to seek a separation from an unworthy husband, and might prevent her from asking for the relief which the law designs for her. For if she remains with her husband after he has forfeited all claim to her respect and confidence, until his death, she will have dower in any lands he may have alienated during the coverture. But if she withdraws from the connection, she may be cut off from all dower ; for it would be in the power of the husband, after committing the crime which is a legal cause of divorce, to transfer all his real estate and thus deprive his injured wife of the means of living. Such a construction of the statute would be unnatural and injurious. Nor is it to be supposed that the legislature intended to place in the hands of a criminal husband a power to coerce a continued cohabitation, by exposing the wife to want, if she should avail herself of the liberty afforded her by the law."

Again, it is said that the admission that the " husband was seised of the premises during coverture," is of itself no proof of ownership.

But as has already been seen,—the husband conveyed the premises by deed of warranty, to the defendant. Having received her title from the plaintiff's husband after the marriage and before the divorce, the defendant cannot be heard to deny the seisin of her grantor in this action. *Kimball* v. *Kimball*, 2 Greenl. (2d Ed.) 209; *Nason* v. *Allen*, 6 Greenl. 243; *Hains* v. *Gardner*, 10 Maine, 383; *Smith* v. *Ingalls*, 13 Maine, 284; *Browne* v. *Potter*, 17 Wend. 164, and cases there cited.

The last objection is that it does not appear that the defendant was tenant of the freehold when the action was commenced.

But this point is not open to the defendant at this stage. He should have raised that point, as he undoubtedly would have done

had the facts warranted it, by plea in abatement within the time allowed by the, rules. He cannot be allowed now to do indirectly what the express provisions of the statute and long established rules of court would not have permitted him to do directly since the second day of the August term, 1871.

*Judgment for the plaintiff and nominal damages.*

APPLETON, C. J., CUTTING, DICKERSON, DANFORTH, and PETERS, JJ., concurred.